IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION, | ) |
| Plaintiff, | ) Case No. 17-cv-08746 |
| v. | ) |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | ) |
| Defendants. | ) |

# COMPLAINT

Plaintiff Deckers Outdoor Corporation ("Deckers") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

## I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Internet stores operating under the Defendant Domain

Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products using counterfeit versions of Deckers' trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products using counterfeit versions of Deckers' trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Deckers substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Deckers to combat online counterfeiters who trade upon Deckers' reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit products, including boots, using counterfeit versions of Deckers' federally registered UGG trademarks (the "Counterfeit UGG Products"). Defendants create the Defendant Internet Stores by the hundreds and design them to appear to be selling genuine UGG products, while actually selling Counterfeit UGG Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Counterfeit UGG Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. Deckers is forced to file these actions to combat Defendants'

counterfeiting of the registered UGG trademarks, as well as to protect unknowing consumers from purchasing Counterfeit UGG Products over the Internet. Deckers has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable UGG trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

4.  Plaintiff Deckers is well-known throughout the United States and elsewhere as a source of high quality footwear products, including the famous UGG brand of premium sheepskin footwear (the "UGG Products"). UGG Products are distributed and sold to consumers through retailers throughout the United States, including over 100 authorized retailers in Illinois, the ugg.com website and UGG Concept Stores.

5.  Since acquiring the UGG trademarks and the goodwill of the business in 1995, Deckers has continuously sold footwear and clothing under the UGG trademarks and stylized variations and logos (collectively, the "UGG Trademarks"). Deckers has built substantial goodwill in the UGG Trademarks. The UGG Trademarks are famous and valuable assets of Deckers.

6.  Deckers holds registrations for the UGG Trademarks in more than 100 countries around the world, including but not limited to, the following United States Registrations:

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 3,050,925 | UGG | January 24, 2006 | For: Men's, women's, and children's footwear, namely, boots, shoes, clogs, slippers; men's, women's and children's clothing, namely, coats, jackets; children's buntings in class 025. |
| 3,360,442 | UGG | December 25, 2007 | For: Footwear, namely, sandals; clothing, namely, vests, mittens, scarves, headwear, namely, caps earmuffs in class 025. |
| 3,636,029 | (sunburst logo) | June 9, 2009 | For: Leather bags in class 018. |
| 3,825,543 | (sunburst logo) | July 27, 2010 | For: Coats; Jackets; Vests; Ponchos; Gloves; Mittens; Headwear; Wraps; Scarves; Sweaters in class 025. |
| 3,624,595 | (sunburst logo) | May 19, 2009 | For: Footwear in class 025. |
| 4,234,396 | UGG (stylized logo) | October 30, 2012 | For: Footwear; clothing, namely, sweaters, coats, jackets, vests, ponchos, snow suits, scarves and gloves; headwear; children's buntings in class 025. |
| 4,675,489 | (sunburst logo) | January 20, 2015 | For: Footwear in class 025. |

The above U.S. registrations for the UGG Trademarks are valid, subsisting, in full force and effect, and some are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the UGG

Trademarks constitute *prima facie* evidence of their validity and of Deckers' exclusive right to use the UGG Trademarks pursuant to 15 U.S.C. § 1057(b).  True and correct copies of the United States Registration Certificates for the above-listed UGG Trademarks are attached hereto as **Exhibit 1**.

7.  The UGG Trademarks have been used continuously for many years, some since as early as 1979, by Deckers and its predecessors in interest.  The UGG Trademarks are used on UGG Products and are famous among consumers worldwide, particularly with sheepskin footwear consumers.

8.  Deckers is well known in the footwear industry and luxury goods markets as UGG.

9.  Deckers has expended considerable resources on advertising, marketing, and promoting the UGG Trademarks and in maintaining the distribution and sale of high quality products in connection therewith.  As such, Deckers has established goodwill and a favorable reputation for itself and its UGG Trademarks.  Deckers' UGG Trademarks are among its most valuable assets.

10.  Deckers extensively markets its UGG Trademarks in the United States and other countries and (together with its predecessors) has spent tens of millions of dollars since 1979 to build the UGG brand.  Deckers invests millions of dollars per year marketing its UGG brand.

11.  The UGG Trademarks are distinctive when applied to high quality apparel, footwear, and related merchandise, signifying to the purchaser that the products come from Deckers and are manufactured to Deckers' quality standards.  Whether Deckers manufactures the products itself or licenses others to do so, Deckers has ensured that products bearing its trademarks are manufactured to the highest quality standards.  Deckers' products branded under

the UGG Trademarks have been widely accepted by the public and are enormously popular as demonstrated by over one and a half billion dollars in sales last year. In view of this popularity, the UGG Trademarks are famous marks.

**The Defendants**

12. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell, and, on information and belief, has sold and continues to sell Counterfeit UGG Products to consumers within the United States, including the State of Illinois.

13. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using counterfeit versions of the UGG Trademarks in the same transaction, occurrence, or series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Deckers to learn Defendants' true identities and the exact interworking of their counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Deckers will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

14. The success of Deckers' UGG brand has resulted in its significant counterfeiting. Consequently, Deckers has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and

reported by consumers. In recent years, Deckers has identified hundreds of domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer, eBay, AliExpress, and Alibaba, including the Defendant Internet Stores, which were offering for sale and selling Counterfeit UGG Products to consumers in this Judicial District and throughout the United States. Despite Deckers' enforcement efforts online and on the ground, Defendants have persisted in creating the Defendant Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2014 was over $1.23 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

15. Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal. Numerous Defendant Domain Names also incorporate the UGG Trademarks into the URL, and the Defendant Internet Stores often include content and design elements that make it very difficult for consumers to distinguish such counterfeit sites from the official ugg.com website or another authorized website. Many Defendants further perpetuate the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the Visa®, MasterCard®, and/or PayPal® logos. Deckers has not licensed or

authorized Defendants to use its UGG Trademarks, and none of the Defendants are authorized retailers of genuine UGG Products.

16. Many Defendants also deceive unknowing consumers by using the UGG Trademarks without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for UGG Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine UGG Products. Other Defendants only show the UGG Trademarks in product images while using strategic item titles and descriptions that will trigger their listings when consumers are searching for genuine UGG Products.

17. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information. On information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

18. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, Counterfeit UGG Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit UGG Products were manufactured by and come from a common source and that Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and design elements, including content copied from Deckers' official ugg.com website.

19. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

20. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Deckers' enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

21. Defendants, without any authorization or license from Deckers, have knowingly and willfully used and continue to use the UGG Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit UGG Products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit UGG Products into the United States, including Illinois.

22. Defendants' use of the UGG Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit UGG Products, including the sale of Counterfeit UGG Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Deckers.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

23. Deckers hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 22.

24. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered UGG Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The UGG Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Deckers' products offered, sold or marketed under the UGG Trademarks.

25. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the UGG Trademarks without Deckers' permission.

26. Deckers is the exclusive owner of the UGG Trademarks. Deckers' United States Registrations for the UGG Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Deckers' rights in the UGG Trademarks, and are willfully infringing and intentionally using counterfeits of the UGG Trademarks. Defendants' willful, intentional and unauthorized use of the UGG Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit UGG Products among the general public.

27. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

28. Deckers has no adequate remedy at law, and if Defendants' actions are not enjoined, Deckers will continue to suffer irreparable harm to its reputation and the goodwill of its well-known UGG Trademarks.

29. The injuries and damages sustained by Deckers have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit UGG Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

30. Deckers hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 29.

31. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit UGG Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Deckers or the origin, sponsorship, or approval of Defendants' Counterfeit UGG Products by Deckers.

32. By using the UGG Trademarks on the Counterfeit UGG Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit UGG Products.

33. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit UGG Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

34. Deckers has no adequate remedy at law and, if Defendants' actions are not enjoined, Deckers will continue to suffer irreparable harm to its reputation and the goodwill of its UGG brand.

# COUNT III
## CLAIM FOR INJUNCTIVE RELIEF UNDER THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT (15 U.S.C. §1125(d)) AS TO THE DEFENDANTS OPERATING A DEFENDANT DOMAIN NAME INCORPORATING THE UGG TRADEMARKS

35. Deckers hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 34.

36. Deckers is the exclusive owner of the UGG Trademarks. The U.S. Registrations for the UGG Trademarks (Exhibit 1) are in full force and effect. Additionally, the UGG Trademarks are highly distinctive and famous marks pursuant to 15 U.S.C. § 1125 and were famous before and at the time of the registration of the Defendant Domain Names.

37. Upon information and belief, Defendants operating a Defendant Domain Name incorporating any of the UGG Trademarks have acted with bad faith intent to profit from the unauthorized use of the UGG Trademarks and the goodwill associated therewith by registering, trafficking in, or using various domain names which are identical to, confusingly similar to, or dilutive of the distinctive and famous UGG Trademarks.

38. Defendants have no intellectual property rights in or to the UGG Trademarks.

39. Defendants' actions constitute willful cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

40. Deckers has no adequate remedy at law, and the registration and use of the Defendant Domain Names incorporating the UGG Trademarks has caused, is causing, and is likely to continue to cause substantial and irreparable injury to the public and to Deckers.

## COUNT IV
### VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, *et seq.*)

41. Deckers hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 40.

42. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit UGG Products as those of Deckers, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with Deckers' UGG Products, representing that their products have Deckers' approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

43. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

44. Deckers has no adequate remedy at law, and Defendants' conduct has caused Deckers to suffer damage to its reputation and associated goodwill. Unless enjoined by the Court, Deckers will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

### PRAYER FOR RELIEF

WHEREFORE, Deckers prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the UGG Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine UGG Product or is not authorized by Deckers to be sold in connection with the UGG Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine UGG Product or any other product produced by Deckers that is not Deckers' or not produced under the authorization, control, or supervision of Deckers and approved by Deckers for sale under the UGG Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit UGG Products are those sold under the authorization, control or supervision of Deckers, or are sponsored by, approved by, or otherwise connected with Deckers;

    d. further infringing the UGG Trademarks and damaging Deckers' goodwill; and

    e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Deckers, nor authorized by Deckers to be sold or offered for sale, and which bear any of Deckers' trademarks, including the UGG Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Deckers' choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to Deckers, and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc.,

Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Deckers' selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap Inc. ("Namecheap") shall take any steps necessary to transfer the Defendant Domain Names to a registrar account of Deckers' selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

3) Entry of an Order that, upon Deckers' request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as iOffer, eBay, AliExpress, and Alibaba, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, Internet search engines such as Google, Bing and Yahoo, and domain name registrars, including, but not limited to, GoDaddy, Name.com, PDR, and Namecheap, (collectively, the "Third Party Providers"), shall:

    a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the UGG Trademarks;

    b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the UGG Trademarks; and

    c. take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index;

4) That Defendants account for and pay to Deckers all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the UGG Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that Deckers be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the UGG Trademarks and $100,000 per domain name incorporating any of the UGG Trademarks pursuant to 15. U.S.C. § 1117(d);

6) That Deckers be awarded its reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

Dated this 5th day of December 2017.         Respectfully submitted,

/s/ Justin R. Gaudio
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 /312.360.9315 (facsimile)
kguynn@gbc.law
aziegler@gbc.law
jgaudio@gbc.law
jbloodgood@gbc.law

*Counsel for Plaintiff Deckers Outdoor Corporation*